IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| LISA WHITEHEAD,<br><br>   Plaintiff,<br><br>v.<br><br>STERLING JEWELERS, INC.,<br><br>   Defendant. | )<br>)<br>)<br>) Case No. 2:21-cv-02525<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Defendant Sterling Jewelers Inc. ("Defendant" or "Sterling"), by and through counsel and pursuant to Fed. R. Civ. P. 56, hereby submits this Memorandum in Support of its Motion for Summary Judgment. There are no genuine issues of material fact for trial, and Sterling is entitled to judgment as a matter of law.

**I. INTRODUCTION**

Plaintiff Lisa Whitehead ("Plaintiff"), a jewelry sales consultant for Sterling in its Southaven, Mississippi store, was furloughed, along with her co-workers, at the beginning of the COVID-19 pandemic in March of 2020. When Sterling re-opened its stores on a limited basis in May of 2020, it called Plaintiff first – before her co-workers – about returning to work, but Plaintiff was unavailable. Sterling contacted Plaintiff later that summer and set a return-to-work date; however, upon learning that Plaintiff was planning to come back, her co-workers raised complaints regarding Plaintiff's pre-furlough workplace behavior. After being informed of these complaints, Plaintiff filed a complaint of her own, with Sterling's Human Resources Department. Sterling internally investigated the matter and, after finding no support for Plaintiff's claims and

completing the investigation, communicated tirelessly with Plaintiff about returning to work. Plaintiff refused to do so.

Plaintiff filed her Complaint, *pro se*, on August 12, 2021, alleging claims for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). (Doc. 1.) On October 20, 2021, Plaintiff (represented by counsel) filed an Amended Complaint, alleging claims of race discrimination and retaliation in violation of Title VII and the Tennessee Human Rights Act ("THRA"). (Doc. 13.)[1] Sterling is entitled to summary judgment on all claims.

First, Plaintiff has not been subjected to an adverse employment action. Second, there is no evidence that any treatment of Plaintiff was based on her race or any protected activity. In addition, as asserted in Defendant's pending Rule 12(c) Motion, Plaintiff's Title VII claims fail because she failed to file her EEOC Charge within 180 days, and her THRA claims fail because she was not employed in Tennessee – and does not allege any discriminatory acts in Tennessee.

## II. FACTUAL BACKGROUND

### A. Plaintiff's Employment with Sterling

Sterling hired Plaintiff, an African American, in October of 2015 as a sales consultant at its Kay Jewelers Tanger Outlet store in Southaven, Mississippi (Store 2985). (SOF ¶ 2.)[2] In her position as a sales consultant, Plaintiff's job duties included: working effectively with other employees, adhering to company policies and procedures, and actively selling to store customers. (SOF ¶ 3.) On July 2, 2017, Jodi Jordan (White) became the Store Manager of Store 2985. (SOF ¶¶ 4-5.)

---

[1] Plaintiff is no longer represented by counsel, as her lawyer withdrew from the case. (Doc. 59.)
[2] Pursuant to Local Rule 56.1, Defendant's Statement of Undisputed Material Facts ("SOF") is filed herewith.

In March of 2020, Store 2985 closed due to the COVID-19 pandemic, and Plaintiff and the other hourly employees were furloughed. (SOF ¶ 6.)

B. **Reopening of Store 2985**

On or about May 22, 2020, Plaintiff's District Manager Eric Smith (African American) contacted Plaintiff about returning to work from furlough, but Plaintiff "informed Smith that [she] was unable to immediately return to work due to [her] mother's illness and lack of child care for [her] two-year-old son." (SOF ¶ 25.) Smith told Plaintiff he would call in other associates to work, that the store still had limited hours, and that he would call Plaintiff when more hours became available. (SOF ¶ 26.)

On or about September 13, 2020, Smith texted Plaintiff, informing her that Jordan had attempted to contact Plaintiff multiple times about returning to work, most recently on August 19, 2020. (SOF ¶ 27.) Plaintiff told Smith this was not accurate and allegedly sent Smith a screenshot of her telephone records, purportedly showing that Jordan had called Plaintiff one time, Plaintiff had tried to call Jordan back, but Jordan did not return Plaintiff's call thereafter. (SOF ¶ 28.) After this exchange with Smith regarding the discrepancy in the communications with Jordan, Plaintiff and Sterling established a date for Plaintiff to return to work (the week of September 27, 2020), and Jordan sent Plaintiff the work schedule. (SOF ¶ 29.)

Before Plaintiff returned to work, Smith again called Plaintiff, this time to discuss complaints three of her Store 2985 co-workers (Jordan, Assistant Manager ("AM") Natasha Jarandogha (White), and fellow sales associate Patricia Nichols (White)) had raised about Plaintiff upon learning of her impending return to work. (SOF ¶¶ 24, 30-31.) Specifically, Jarandogha reported that Plaintiff created a toxic environment and that, prior to the furlough, Jarandogha was ready to quit because she did not want to work with Plaintiff any longer. (SOF ¶ 32.) Jarandogha

3

also reported that Plaintiff repeatedly said she would not return to work from furlough and she was going to let Sterling "beg" her to return to work. (SOF ¶ 33.) Jordan later echoed the concerns raised by Jarandogha. (SOF ¶ 34.)

Plaintiff believes these complaints were in retaliation for Plaintiff "whistleblowing" to Smith regarding the lack of communication from Jordan and because Plaintiff was a "top seller" and that her co-workers were jealous of her success – <u>not</u> that her co-workers' complaints were based on her race or any protected activity. (SOF ¶ 35.)

> Q. Okay. So you think that those – that these complaints from your co-workers were in retaliation for you outing Jodi Jordan to Eric Smith, meaning that she hadn't really been trying to contact you about returning to work?
>
> A. **<u>Exactly.</u>**

(SOF ¶ 36.)

> A: I had no idea that these people feel like this about me. I mean, the only thing that I can gather from it is it was a planned attack [by AM Natasha Jarandogha] and that it was orchestrated because I was a top seller, and they wanted the spot. **<u>That's all I can come up with.</u>**

(SOF ¶ 36.)

Plaintiff claims she asked Smith to report the matter to Sterling's Human Resources Department, but that Smith stated he was going to let the store employees work it out amongst themselves, and so Plaintiff decided to report the issues to HR herself. (SOF ¶ 40.)

### C. <u>Investigation into Plaintiff's HR Complaint</u>

On October 13, 2020, Plaintiff sent a written complaint to Paula Spalla (Manager, Human Resources Business Partner (HRBP)). (SOF ¶ 41.) **<u>The only issues raised in this document arose out of Store 2985 in Southaven, Mississippi.</u>** (SOF ¶ 42.) At the beginning of the complaint, Plaintiff wrote: "I, Lisa Whitehead, am filing a formal complaint against Signet Jewelers Store

4

2985."[3] (SOF ¶ 42.) Relevant to this lawsuit, Plaintiff alleged she had been "subjected to a variety of violations against EEOC policies," including "retaliation from management for whistleblowing" and race discrimination. (SOF ¶ 43.)

Spalla referred Plaintiff's complaints to the Company's investigations department. (SOF ¶ 45.) Sterling offered for Plaintiff to work in another store location while the investigation was pending, but Plaintiff elected to use her Paid Time Off (PTO) instead. (SOF ¶ 46.) In Plaintiff's own words, she had "committed [herself] to doing something else" while Sterling conducted the investigation. (SOF ¶ 47.)

Nick Slabaugh (Manager, Internal Investigations) conducted the investigation, which lasted several weeks. (SOF ¶ 48.) Slabaugh determined that, because Plaintiff had not experienced an adverse employment action, nor had she identified any protected activity, there was no evidence to support any claims of discrimination and retaliation. (SOF ¶ 49.) As a result, Slabaugh was not able to substantiate any of Plaintiff's claims and closed out the investigation. (SOF ¶ 50.) On January 5, 2021, Slabaugh sent Plaintiff a letter, informing her that, after conducting witness interviews and reviewing numerous relevant documents, the investigation was complete. (SOF ¶ 51.) Slabaugh advised Plaintiff to contact HR to discuss next steps. (SOF ¶ 52.)

### D. Sterling Repeatedly Asks Plaintiff to Return to Work, but She Does Not.

Plaintiff contacted Spalla on January 5, 2021, telling Spalla her "schedule [was] very limited for the next two weeks" because she was attending to personal matters (helping her daughter move from school in Atlanta). (SOF ¶ 54.) Spalla referred Plaintiff to HRBP Brooke Engstrom. (SOF ¶ 55.)

---

[3] Defendant Sterling Jewelers is a wholly-owned subsidiary of Signet Jewelers. (SOF ¶ 1.) Signet Jewelers operates approximately 2,800 stores under various name brands, including Kay Jewelers, Zales, and Jared. (SOF ¶ 1.)

Over the course of the next several months, Engstrom repeatedly attempted to contact Plaintiff to discuss Plaintiff's return to work, but Plaintiff did not answer Engstrom's calls or was not available to schedule a call, for multiple reasons, including that Plaintiff was "getting thoughts together" for "an article" that she hopes to publish "one day"; her family was sick; and she was going on a birthday retreat with her family in Texas. (SOF ¶ 56.)

After Plaintiff returned from her birthday trip, she and Engstrom finally were able to connect, and Engstrom put Plaintiff in touch with the new DM, Melissa Arias (Hispanic).[4] (SOF ¶¶ 57, 60.) Arias called and introduced herself to Plaintiff and offered her a position at the Company's Zales Store in Southaven, Mississippi, which would have placed Plaintiff in a store away from Jordan, Jarandogha, and Nichols. (SOF ¶ 61.) Plaintiff refused this job offer and did not return to work, despite Sterling's efforts. (SOF ¶ 62.)

### III. LEGAL ARGUMENT

Defendant is entitled to summary judgment as there are no material facts in dispute that would allow Plaintiff to prevail on her claims.

#### A. Summary Judgment Standard

Summary judgment is appropriate where the pleadings, the discovery, disclosure materials, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To survive summary judgment, any disputed facts must be material and must be facts that, under the substantive law governing the issue, could affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

---

[4] Arias replaced Smith as DM on May 9, 2021. (SOF ¶ 59.)

Once a defendant moves for summary judgment, the plaintiff may not rest on conclusory allegations or denials in the pleadings or rumors and subjective beliefs. Fed. R. Civ. P. 56(e); *Mitchell v. Toledo Hospital*, 964 F.3d 577, 585 (6th Cir. 1992). Neither the mere existence of some alleged factual dispute nor the existence of "some metaphysical doubt as to the material facts" is sufficient to avoid summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Similarly, the plaintiff cannot rely on speculation in order to defeat a summary judgment motion. *Celotex*, 477 U.S. at 324. Rather, a plaintiff must tender cold, hard, admissible facts that establish a necessary and genuine issue for trial. *Id*

## B. **Plaintiff's THRA Claims Fail Because the Statute Does Not Apply to Plaintiff's Extraterritorial Employment.**

Plaintiff's THRA claims fail because the statute does not apply to Plaintiff's employment in Sterling's Southaven, Mississippi store.

In *Williaford v. Holiday Inns, Inc.*, the Tennessee Court of Appeals examined whether the THRA applies to employment outside of Tennessee. *See id.*, No. 94960-2 R.D., 1988 WL 77627, at *2 (Tenn. Ct. App. July 28, 1988). Looking to the Tennessee Supreme Court's opinion in *Snyder v. Yates*, the *Williaford* Court recognized: "'The statute laws of a State have of themselves no extraterritorial force, and whatever effect they have in foreign States they have by virtue of the laws of such State, or under the doctrine of the comity of States.'" *Id*. at *2-3 (quoting *Snyder*, 112 Tenn. 309, 312, 79 S.W. 796, 796 (1903)).

In specifically examining the applicability of the THRA, the *Williaford* Court looked at the "purpose and intent of the legislature" in enacting the THRA:

> Purpose and intent. (a) It is the purpose and intent of the general assembly by this chapter:
>
> (1) To provide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964, 1968, and 1972, the Pregnancy Amendment of 1978, and the Age Discrimination in Employment Act of 1967, as amended;

7

> (2) To assure that Tennessee has appropriate legislation prohibiting discrimination in employment, public accommodations, and housing sufficient to justify the deferral of cases by the federal equal employment opportunity commission, the department of housing and urban development, the secretary of labor, and the department of justice under those statutes;
>
> (3) To safeguard all individuals within the state from discrimination because of race, creed, color, religion, sex, age, or national origin in connection with employment, public accommodations, and because of race, color, creed, religion, sex, or national origin in connection with housing;
>
> (4) To protect their interest in personal dignity and freedom from humiliation;
>
> (5) To make available to the state their full productive capacity in employment;
>
> (6) To secure the state against domestic strife and unrest which would menace its democratic institutions;
>
> (7) To preserve the public safety, health, and general welfare; and
>
> (8) To further the interest, rights, opportunities, and privileges of individuals within the state.

*Id.* at *3 (quoting Tenn. Code Ann. § 4-21-101).

"The rule of statutory construction to which all others yield is that the intention of the legislature must prevail." *Id.* (citing *City of Caryville v. Campbell Cnty.*, 660 S.W.2D 510, 512 (Tenn. App. 1983); *City of Humboldt v. Morris*, 579 S.W.2d 860, 863 (Tenn. App. 1978)). "The legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used when read in the context of the entire statute and without any forced or subtle construction to limit or extend the import of the language." *Id.* (citing *Worrell v. Kroger Co.*, 545 S.W.2d 736, 738 (Tenn. 1977)). "The legislature in effect created a cause of action in tort for the discriminatory acts set out in the statute. By the language used in T.C.A. § 4-21-101, . . . the legislature intended for the Act to apply to torts committed **within this state**." *Id.* (emphasis added).

Plaintiff claims she worked in Sterling stores in Memphis (Oak Court) and Collierville, Tennessee. (SOF ¶ 8.) Even if this were true, it is undisputed that Plaintiff did not work in either of these stores during the actionable time period for her THRA claims. The THRA has a one-year statute of limitations. Tenn. Code Ann. § 4-21-311(d). Plaintiff filed her lawsuit on August 12, 2021. (Doc. 1; SOF ¶ 9.) It is undisputed that Plaintiff has not worked in any Sterling stores – in any state – since March of 2020, more than a year prior to the filing of this lawsuit.

Plaintiff cannot recall the last time she allegedly worked at the Collierville store, and Sterling has no record of her ever having worked there. (SOF ¶¶ 10-11.) Plaintiff admits the last time she worked at a Memphis location was before the COVID-19 pandemic, and her time records show she worked at a store in Memphis (Store 1575) for one day only, on September 24, 2019. (SOF ¶¶ 12-13.) Indeed, as Plaintiff's time records show, she worked only at Store 2985 in Mississippi, other than that one day on September 24, 2019 – well <u>more</u> than a year prior the filing of this lawsuit and more than two years prior to her October 13, 2021 written complaint to Spalla. (SOF ¶ 14.)

Critically, even if Plaintiff had worked at a Collierville or Memphis store during the actionable time period (which she did not), Plaintiff admits she was <u>not</u> subjected to any discrimination at either of the Tennessee locations where she purports to have worked:

> Q. Do you contend that you were subjected to any discrimination at the Collierville, Tennessee location?
>
> A. **<u>No.</u>**
>
> Q. Do you contend that you were subjected to any discrimination at the [Memphis] Oak Court location?
>
> A. **<u>No.</u>**

(SOF ¶ 15.)

Here, the record establishes that Plaintiff did not work in any Sterling store during the actionable time period for her THRA claims, she has worked in Mississippi exclusively (other than 1 day in 2019), and Plaintiff alleges claims of discrimination that arose in Mississippi only and admits she was not subjected to any alleged discrimination in Tennessee. (Am. Compl. ¶ 4; SOF ¶¶ 12-15.) As in *Williaford*, the Court should dismiss Plaintiff's THRA claims on the grounds that the THRA does not apply to employment outside of Tennessee. *Id*. at *4.

### C. Plaintiff's Title VII Claims Fail Because She Failed to Timely File a Charge of Discrimination.

Plaintiff was required to exhaust administrative remedies in a timely manner by filing a charge with the EEOC or relevant agency within 180 days of the allegedly discriminatory conduct in non-deferral states or within 300 days of the allegedly discriminatory conduct in deferral states. 42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 101-02 (2002). As set forth above, and as Plaintiff admits, her claims arose in Mississippi, which is a non-deferral state. *Morton v. ICI Acrylics, Inc.*, 69 F. Supp. 2d 1038, 1042 (W.D. Tenn. 1999). As a result, Plaintiff had 180 days from the date of the alleged harm to file her Charge of Discrimination with the EEOC.

Plaintiff did not file her EEOC Charge until April 19, 2021, more than 180 days after her October 13, 2020 written complaint to Sterling's HR Department. (SOF ¶ 63.) "The 180 day period acts as a statute of limitations." *Ross v. Greenwood Utils.*, No. 4:12-cv-120, 2014 WL 4197640, at *2 (N.D. Miss. Aug. 22, 2014) (citing *Morgan*, 536 U.S. at 114-15.) The limitations period began to run, at the latest, on October 13, 2020, when Plaintiff initiated her internal claim of discrimination and retaliation. *Id*. ("The limitations period begins to run from the time the complainant knows or reasonably should have known that the challenged act occurred"); *see also Delaware State Coll. v. Ricks*, 449 U.S. 250 (1980). In *Ricks*, a faculty member alleged that he was

10

denied tenure based on his national origin. He was later terminated. The Court determined the statute of limitations began to run on the date of the denial of tenure, because at that time the employee had notice of the alleged wrongful acts. 449 U.S. at 258. The Court stated that that the "proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts become most painful." *Id*. The "mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id*. Here, Plaintiff knew of the alleged adverse employment actions as of the date she sent her complaint to Spalla – October 13, 2020. (SOF ¶ 64.) Plaintiff failed to file her EEOC Charge within 180 days of the alleged discriminatory and retaliatory acts.

Further, Plaintiff can point to no adverse employment action – let alone one that occurred during the actionable time period for her Title VII claims. Plaintiff filed her EEOC Charge on April 19, 2021. (SOF ¶ 63.) Therefore, to be actionable, Plaintiff would have to point to an adverse action that occurred after October 21, 2020 (180 days prior to her Charge). As the facts set forth above show, the only thing Sterling has done since that time is internally investigate Plaintiff's claims and try (in vain) to get her to return to work.

For these reasons, Plaintiff's Title VII claims are barred, and judgment should be entered in Sterling's favor as a matter of law.

### D. **Even if Not Otherwise Barred, Sterling is Entitled to Dismissal Because Plaintiff Cannot Establish the Elements of Her Claims**

Title VII and the THRA prohibit employment practices that "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1); *see also* Tenn. Code. Ann. § 4-21-401(a)(1). Both statutes also prohibit an employer from retaliating against an employee who

11

has opposed an "unlawful employment practice." 42 U.S.C. § 2000e-3(a); Tenn. Code. Ann. § 4-21-301(a)(1).[5]

### 1. Plaintiff cannot establish a *prima facie* case of discrimination.

"Where . . . a plaintiff offers only circumstantial evidence of unlawful discrimination, the Court analyzes the case using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Nichols v. Drexel Chem. Co.*, No. 11-2957-STA-TMP, 2013 WL 2288915, at *10 (W.D. Tenn. May 23, 2013) (citing *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). "Plaintiff bears the initial burden to establish [her] *prima facie* case of discrimination by showing that (1) [she] is a member of a protected group, (2) [she] was subject to an adverse employment decision, (3) [she] was qualified for the position, and (4) [she] was either replaced by a person outside of the protected class or was treated differently than similarly situated non-protected employees." *Id.* (citing *Serrano v. Cintas Corp.*, 699 F.3d 884, 892-93 (6th Cir. 2012)). Here, it is undisputed that, as an African American, Plaintiff is a member of a protected group; for purposes of summary judgment only, Sterling does not dispute that Plaintiff was qualified for her position. However, Plaintiff cannot prove the second or fourth elements of a *prima facie* case of discrimination, and her claim fails as a result.

### a. Plaintiff was not subjected to an adverse employment action.

Plaintiff cannot establish the second element because she was not subject to an adverse employment action. As set forth above, Sterling investigated Plaintiff's October 13, 2020 written complaint and, upon concluding the investigation, spent the next several months trying to get her

---

[5] Courts evaluate THRA claims of discrimination under the same analytical framework and federal case law that apply to claims brought pursuant to Title VII. *Jackson v. Bd. of Educ. of Memphis City Sch. of Memphis, Tenn.*, No. 10-5937, 2012 WL 3326305, at *4 n.1 (6th Cir. Aug. 14, 2012) (citation omitted); Tenn. Code Ann. § 4-21-311(e) (codifying *McDonnell Douglas* burden shifting framework in THRA cases).

to return to work. (SOF ¶¶ 45, 48-52, 56, 61-62.) Plaintiff refused to do so, and she has not been subjected to an adverse action.

Nonetheless, in a feeble effort to establish her claim, Plaintiff points to alleged treatment by Store 2985 Manager, Jodi Jordan, whom Plaintiff contends "abused" employees and did not "treat them right." (SOF ¶ 16.) Plaintiff provides the following examples: (1) when an employee could not come into work, Jordan asked Plaintiff to stay and work or to find someone else to cover the shift; (2) Jordan would delegate cleaning the store to other employees; and (3) Jordan failed to provide adequate training to other employees (although Plaintiff acknowledges Jordan did not do this to Plaintiff). (SOF ¶ 17.)

First of all, any treatment of Plaintiff by Jordan necessarily occurred before March 21, 2020[6] – more than a year before Plaintiff filed this lawsuit (August 12, 2021) and more than 180 days before Plaintiff filed her EEOC charge (April 19, 2021), and so her THRA and Title VII claims are time-barred as a matter of law.

Second, the type of treatment alleged by Plaintiff is not materially adverse and cannot support her claims as a matter of law. *See White v. Burlington N. Santa Fe Ry. Co.*, 364 F.3d 789, 797 (6th Cir. 2004), *aff'd*, 548 U.S. 53 (2006) ("To prevent lawsuits based upon trivial workplace dissatisfactions, we require that a plaintiff prove the existence of an 'adverse employment action' to support a Title VII claim.") (citing *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir.1999) (defining "adverse employment action" as a "materially adverse change in the terms and conditions of [plaintiff's] employment").

The type of treatment to which Jordan supposedly subjected Plaintiff and the other Store 2985 employees is *de minimis* at best and does not constitute a materially adverse employment

---

[6] Plaintiff's time records show her last day worked was March 21, 2020. (SOF ¶ 7.)

action. *See Poppy v. City of Willoughby Hills*, 96 F. App'x 292, 296 (6th Cir. 2004) (childish incidents, like supervisor allegedly giving plaintiff "the finger," "do not amount to cognizable adverse employment action."); *Ross v. Fluid Routing Sols., Inc.*, No. 1:23-cv-01269-JDB-EG, 2014 WL 2168168, at *19 (W.D. Tenn. May 23, 2014) (plaintiff's allegations she was "ignored, disregarded, and/or not afforded appropriate attention by members of management" did not constitute adverse employment action), *aff'd*, 605 F. App'x 544 (6th Cir. 2015). Plaintiff cannot show she was subjected to an adverse employment action, and her claims warrant dismissal.

### b. Plaintiff cannot prove any treatment of her was because of her race.

Aside from the fact that alleged treatment by Jordan does not amount to an adverse employment action, Plaintiff contends Jordan subjected <u>all</u> employees to this type of treatment, including non-African American employees.[7] (SOF ¶ 18.) Because Plaintiff contends Jordan treated all employees the same way – regardless of race – Plaintiff's claim fails. *See Payne v. Illinois Cent. Gulf R.R.*, 665 F. Supp. 1308, 1323 (W.D. Tenn. 1987) (evidence did not support plaintiff's contention that supervisor's treatment was racially motivated where supervisor ordered employees, both black and white, to perform tasks they did not want to perform).

Plaintiff then attempts to support her claim by saying that, because she is African American, but the three employees who raised complaints about her (Jordan, Jarandogha, and Nichols) are not, their complaints to Smith about Plaintiff amounted to discrimination. (SOF ¶ 37.) Plaintiff alleges she told Smith she "believed" these complaints were an attempt to have Plaintiff terminated "because of her race." (SOF ¶ 38.) However, she has no evidence to support this contention, and her belief is not sufficient to support her claim; again, the only reason Plaintiff

---

[7] Plaintiff alleges the following employees were treated similarly by Jordan: Thomas Geiger, Deborah Nevill, Courtney Childers, Claire Kelly, Tiffany Dallman, and Brit Bowers (all White); Demetrius Robinson, Danshell Johnson, and Kenya Powers (all Black or African American); and Katrina Bowers (two or more races). (SOF ¶¶ 19-22.) Plaintiff alleges Jordan also subjected Jarandogha (White) to adverse treatment. (SOF ¶¶ 23-24.)

14

believes any of the complaints about her was due to her race was because Plaintiff was the only African American:

> Q. In Paragraph 7 [of the Amended Complaint], you say you reported to the district manager that you believed the fabricated story from the store manager was an attempt to have you terminated because of your race. What did you say to Mr. Smith about that?
>
> A. What did I say to Mr. Smith about having terminated about my race?
>
> Q. Yes.
>
> A. We had a conversation about Jodi making a remark saying that she wanted people to work for her that was . . . loyal to her and not Kay and Eric. So she knew that I wasn't that type of person. She couldn't control me like that. So obviously, she had a issue with it.
>
> Q. Anything else that led you to believe that any action by Jodi Jordan was because of your race?
>
> A. It's kind of hard to answer that because **I'm not sure.** Because again, I didn't see none of this behavior. It happened all of a sudden. **So really to be honest, to be honest as possible, the race part plays a part for me is because everybody that made the complaints against me for this particular alleged complaint that Eric called me about was Jodi, Trish and Natasha. And I was the only black person. That's where race is huge concern to me at.** And on top of that, I never seen any of this coming in no conversation that I had with neither of the three. So that's why race is a very big factor in this for me.
>
> Q. Anything else?
>
> A. No, ma'am.

(SOF ¶ 39.)

Plaintiff cannot rely on the mere fact that other employees were White while she is African American to support a discrimination claim. *See Okojie v. Metro. Nashville Hosp. Auth.*, 584 F. Supp. 3d 543, 557 (M.D. Tenn. 2022), *appeal dismissed*, No. 22-5164, 2022 WL 3754859 (6th Cir. July 28, 2022) ("Plaintiff's perception (a perception which appears to be based solely on Plaintiff's race being different than the other employees' race(s)) that it was race that motivated these events by itself is not sufficient to show that the other employees' actions were based on

15

race"); *Ector v. Potter*, No. 1:08-cv-726, 2010 WL 1433311, at *9 (S.D. Ohio Apr. 5, 2010) ("Here, the fact that [the plaintiff], an African-American, experienced conflicts with Caucasian supervisors, is insufficient to establish that these conflicts were based on race.") (citing *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 282 (4th Cir. 2000) ("[The] [l]aw does not blindly ascribe to race all personal conflicts between individuals of different races . . . Instead, legally sufficient evidence is required to transform an ordinary conflict . . . into an actionable claim of discrimination.")).

### 2. Plaintiff cannot establish a *prima facie* case of retaliation.

Sterling is also entitled to summary judgment on Plaintiff's claims of retaliation under Title VII and the THRA. To prove a *prima facie* case of retaliation, Plaintiff must show that: (1) she engaged in legally protected activity under those statutes; (2) Sterling knew about Plaintiff's protected activity; (3) Sterling took a materially adverse action against Plaintiff; and (4) the protected activity and the adverse action are causally connected. *Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th Cir. 2008); *see also Davis v. City of Clarksville*, 492 F. App'x 572, 582 (6th Cir. 2012). Plaintiff's retaliation claim fails at the *prima facie* stage.

During her deposition, Plaintiff was asked to articulate the basis for her claim of retaliation. Plaintiff testified under oath that her retaliation claim related to her "whistleblowing" to Smith regarding Jordan's alleged failure to communicate or because Plaintiff's co-workers were jealous of her status as a "top seller." (SOF ¶¶ 35-36.) First, Plaintiff's claim of retaliation is time-barred under the THRA because the "retaliation" Plaintiff describes occurred more than one year before the filing of this lawsuit, and it is also time-barred under Title VII because it occurred more than 180 days prior the filing of the EEOC charge.

Moreover, Plaintiff's retaliation claim fails as a matter of law because she does not point to any legally protected activity. Rather, Plaintiff testified that her co-workers complained about

her because Plaintiff had "outed" Jordan to Smith regarding the lack of communication and because her co-workers were envious of her success. Neither of these issues is activity protected under the THRA or Title VII.[8]

Finally, as with Plaintiff's discrimination claim, her retaliation claim fails because she cannot establish that she was subjected to any adverse employment action. As set forth above, after completing the investigation into Plaintiff's complaints about her co-workers, Sterling repeatedly contacted Plaintiff about returning to work. (SOF ¶¶ 56, 61-62.) Sterling even offered her a position at a different Southaven store, but Plaintiff refused to come back. (SOF ¶¶ 61-62.)[9] Thus, Plaintiff's retaliation claim also fails at the third element of her *prima facie* case.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's claims of race discrimination and retaliation under Title VII and the THRA must be dismissed in their entirety, and Defendant is entitled to judgment as a matter of law.

---

[8] In addition, Plaintiff's co-workers' complaints about Plaintiff occurred before Plaintiff's October 13, 2020 written complaint to HR (SOF ¶ 44) – which is the only arguably legally protected activity in which Plaintiff engaged – and so the complaints could not have been retaliatory. *Fakorede v. Mid-South Heart Ctr., P.C.*, 182 F. Supp. 3d 841, 854-55 (W.D. Tenn. 2016) (citing *Howard v. Lockheed Martin Corp.*, 14 F. Supp. 3d 982, 1026 (6th Cir. 2014) (plaintiff's claim failed where he had not "'established that the purported retaliatory conduct was taken after and in response to his purported protected activity' . . . . Accordingly, his termination obviously could not be said to have been because of protected activity contained in the post-discharge email."). It is undisputed that, since Plaintiff's October 13, 2020 complaint, she has not been subjected to any adverse employment action. Rather, the only actions Sterling has taken since that time were to investigate the matter and try to return Plaintiff to work.

[9] Plaintiff claims that, after the investigation, Jordan took Plaintiff's certification plaque off the store wall and told customers Plaintiff was no longer an employee at Store 2985. (SOF ¶ 53.) First of all, Plaintiff has no admissible evidence of these allegations, as they are based only on hearsay and, therefore, cannot be used to escape summary judgment. *Sperle v. Michigan Dept. of Corr.*, 297 F.3d 483, 495 (6th Cir. 2002) ("A party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact.") (citing *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000) (disregarding many of the plaintiff's allegations because they were based upon hearsay rather than personal knowledge)). Further, it is undisputed that Plaintiff has not worked for Sterling since March 21, 2020 (despite the Company's repeated efforts to return her to work), and so if Jordan had made such a statement to customers, it would be true. Finally, even if these allegations were admissible, they do not amount to an adverse employment action and so cannot be used to support Plaintiff's claims. *See McMillian v. Potter*, 130 F. App'x 793, 796 (6th Cir. 2005) ("A *de minimis* employment decision is not sufficient to support a Title VII claim [and] simply because an employee is made unhappy by an action does not mean that [she] has identified an adverse employment action.").

Dated this 17th day of November, 2022.

Respectfully submitted,

*s/Luci L. Nelson*
William S. Rutchow, TN #017183
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
SunTrust Plaza, Suite 1200
401 Commerce Street
Nashville, TN 37219-2446
Telephone: 615-254-1900
Facsimile: 615-254-1908
bill.rutchow@ogletree.com

Luci L. Nelson, TN #036354
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
The Ogletree Building
300 N. Main St., Suite 500
Greenville, SC 29601
Telephone: 864-271-1300
Facsimile: 864-235-8806
luci.nelson@ogletree.com
*Admitted pro hac vice*

*Attorneys for Defendant Sterling Jewelers, Inc.*

**CERTIFICATE OF SERVICE**

    I hereby certify that on this the 17th day of November, 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon and was served via Certified U.S. Mail, Return Receipt Requested upon the following:

Lisa Whitehead
P.O. Box 30076
Memphis, TN 38130

Lisa Whitehead
988 Lumsden Manor 303
Collierville, TN 38017

*Plaintiff, pro se*

                                       *s/ Luci L. Nelson* _____

53650300.v4-OGLETREE