**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| LISA WHITEHEAD, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 2:21-cv-02525-JTF-tmp |
| ) | |
| STERLING JEWELERS, INC., ) | |
| ) | |
|    Defendant. ) | |
| ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Before the court is the defendant Sterling Jewelers, Inc.'s ("Sterling") Motion for Judgement on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (ECF No. 36.) Plaintiff Lisa Whitehead filed a *pro se* complaint against the defendant on August 12, 2021, alleging that Sterling, her former employer, furloughed and refused to rehire her in violation of Title VII of the Civil Rights Act of 1964. (ECF No. 1.) Whitehead secured representation on September 27, 2021, and filed an Amended Complaint that same day. (ECF No. 9.)  Sterling filed the present motion and an accompanying memorandum on May 12, 2022. (ECF Nos. 36 & 37.) After Whitehead's response time lapsed, the Court entered an Order to Show Cause requiring Whitehead to respond by July 6, 2022. (ECF No. 42.) Whitehead filed a response on July 6, 2022. (ECF No. 44.) On July 11, 2022, Sterling filed a Motion for Leave to File a Reply, which the Court granted that same day. (ECF Nos. 45, 46.) For the reasons set forth below, Sterling's motion is hereby **GRANTED.**

## I.      FACTUAL AND PROCEDURAL HISTORY

This is a case about race discrimination in employment. Lisa Whitehead, a Black woman, was a sales representative at a Kay Jewelers store owned by Sterling, in Southaven, Mississippi.[1] (ECF No. 9, 2.) Whitehead's Amended Complaint alleges that she was "employed by the Defendant at the Collierville, Tennessee location," but this is not supported in the record and is actively contradicted by her Charge of Discrimination and other documents attached to the pleadings. (ECF No. 9, 2.) Regardless, she had worked for the Defendant in some capacity since 2015. (ECF No. 37-1, 8.) At some point, Whitehead was furloughed.[2] On September 17, 2020, Eric Smith, the District Manager for Sterling, called Whitehead and informed her that "her store manager had reported to [Smith] that she'd tried to reach Whitehead several times about returning to work without success," and that the manager had recommended "there should be no further attempts for Whitehead to return. (ECF No. 9, 2-3; ECF No. 37-1, 8.) Whitehead was surprised and showed Smith "proof that she had not received said calls about returning to work from the store manager" and that "the store manager had been ignoring Whitehead's calls and texts in regard to returning to work." (ECF No. 9, 3.) Whitehead also told Smith she believed the store manager had "fabricated" this story in an attempt to fire Whitehead due to her race. (*Id.*) However, on September 19, 2020, Whitehead was contacted by the store manager, a white woman named

---

[1] The following facts are drawn from Whitehead's Amended Complaint and her Charge of Discrimination filed with the Equal Employment Opportunity Commission. (ECF Nos. 9 & 37-1.)

[2] The record is inconsistent about the date on which Whitehead was initially furloughed as well as the stated reasoning for the decision. Her Amended Complaint states that "she was furloughed and effectively demoted and/or terminated without explanation in May of 2019." (ECF No. 9, 2.) Her original *pro se* complaint states she "was furloughed March 2019 with no previous disciplinary actions in my work file." (ECF No. 1, 4.) A complaint she allegedly sent to Sterling's Human Resources department, attached as an exhibit to a declaration submitted along with Sterling's motion, states that "On March 22nd, all Kay employees save managers were furloughed due to the COVID-19 pandemic," which would be a furlough date of March 22, 2020. (ECF No. 37-1, 5.)

2

Jodi Jordan, and asked about returning to work. (*Id.*; ECF No. 37-1, 8.) Jordan sent her the work

schedule and said she was to return to work the week of September 27, 2020. (ECF No. 37-1, 8.)

Her return did not come to pass. Instead, before her first shift, she was again called by

Smith "to discuss complaints and allegations from the store manager and two other employees

from Whitehead's store location that would delay or prevent her return to work." (ECF No. 9, 3.)

Again, Whitehead was surprised. She told Smith these complaints were also fabricated "due to

her race and in retaliation for her reports to the District Manager and Human Resources."[3] (*Id.*)

Whitehead asked Smith to report this to Human Resources, but he failed to do so. (*Id.*) Instead,

Whitehead filed a report with Paula Spaulding on October 13, 2020, which Spaulding "forwarded

to the Investigations department." (ECF No. 37-1, 8.) As of the Amended Complaint, "Whitehead

has still not been asked to return to work on the same terms as prior to her furlough." (ECF No.

9, 3). Further, a sales representative of a different race was hired to replace her. (*Id.*)

The only other contacts Whitehead had with anyone from Sterling were with Nick

Slabaugh, "Manager Internal Investigation," who informed Whitehead on January 5, 2021, that

the investigation into her complaint had been completed. (ECF No. 37-1, 8.) When Whitehead

asked Slabaugh what she should do next, he told her to "contact [Sterling] to discuss [her] next

steps." (*Id.*) Whitehead talked to Slabaugh one more time, on April 13, 2021, asking him pointed

questions about his investigation. (*Id.* at 9.)

Whitehead filed a Charge of Discrimination with the Equal Employment Opportunity

Commission ("EEOC") on April 19, 2021. (*Id.* at 8.) The EEOC issued her a right to sue letter on

May 12, 2021. (ECF No. 1-1.) She then filed the present case on August 12, 2021, and has

---

[3] Whitehead does not identify which reports she is referring to in this statement, and the only reports detailed in the record are ones that came after this alleged conversation took place.

amended her complaint multiple times, ultimately asserting claims under Title VII and the Tennessee Human Rights Act ("THRA"). (ECF No. 9, 1.) Sterling filed the present motion on May 12, 2022, arguing that Whitehead cannot state a claim under the THRA and that her claims under Title VII are time-barred. (ECF No. 36.)

## II.      LEGAL STANDARD

For purposes of a Motion for Judgment on the Pleadings brought under Federal Rule of Civil Procedure 12(c), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless entitled to judgment." *Jackson v. Professional Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.3d 383, 389 (6th Cir. 2007)). This is ultimately "the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6)." *Barber v. Charter Twp. of Springfield, Michigan*, 31 F.4th 382, 386 (6th Cir. 2022) (quoting *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021)). Thus, a district court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Id.* (quoting *Engler v. Arnold*, 862 F.3d 571, 574 (6th Cir. 2017)). "[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss . . . without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007). Further, "EEOC charges and related documents like right-to-sue letters qualify as public records" that the Court may take judicial notice of and consider when deciding a motion to dismiss or motion for judgment on the pleadings. *Simpson v. G4S Secure Solution (USA), Inc.*, No. 12-2875-STA-tmp, 2013 WL

2014493, at *3 (W.D. Tenn. May 13, 2013) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528

F.3d 426, 430 (6th Cir. 2008); *Rhea v. Dollar Tree Stores, Inc.*, 395 F. Supp. 2d 696, 703 (W.D.

Tenn. 2005)).

A relevant statute of limitations is an affirmative defense to any claim, and generally, a

plaintiff "need not plead the lack of affirmative defenses to state a valid claim" under Rule

12(b)(6). *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). However, where "the

allegations in the complaint affirmatively show that the claim is time-barred," then dismissing a

case due to the statute of limitations may be appropriate. *Id.*

### III.    LEGAL ANALYSIS

1.  *Whitehead's THRA Claims*

Sterling argues that Whitehead's THRA claims "fail because the statute does not apply to

Plaintiff's employment in Defendant's Southaven, Mississippi store." (ECF No. 37, 4.)

Whitehead's response only briefly addresses the issue, stating that she is a citizen of Tennessee

and that she "both lived and worked in Tennessee locations of Defendant's jewelry stores when

asked." (ECF No. 44-1, 2.) While Whitehead does state that she worked at a store in Collierville,

Tennessee, her complaint focuses explicitly on discrimination she faced in a potential rehiring at

the Southaven, Mississippi store. (ECF No. 9, 2) ("Whitehead was a sales representative for Kays

Jewelers in Southaven, Mississippi when she was furloughed and effectively demoted and/or

terminated without explanation in May of 2019.") The fabricated complaints made against her

were also made by employees and the manager of the Southaven store. (*Id.* at 2-3.) All

discriminatory conduct alleged in the complaint occurred in Mississippi.

The purpose of the Tennessee Human Rights Act is "to provide for execution within

Tennessee of the policies embodied in the federal civil rights statutes." *Lynch v. City of Jellico*,

205 S.W.3d 384, 399 (Tenn. 2006) (citing *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996)). The question of whether a Tennessee citizen may assert claims under the THRA for covered conduct that occurred outside of Tennessee has hardly been examined. Sterling cites to one case, an unpublished Tennessee Court of Appeals decision, which found that "the legislature intended for the Act to apply to torts committed within this state," and dismissed the plaintiff's THRA claims for discrimination that occurred in Arkansas. *See Williaford v. Holiday Inns, Inc.*, 1998 WL 77627, at *3 (Tenn. Ct. App. Jul. 28, 1988). The *Williaford* court rested on the language of the statute itself, but did consider that an alternative holding would also conflict with Tennessee's adherence to the doctrine of *lex loci delicti*, a rule stating "the law of the place where the tort occurs will be controlling." *Id.* However, Tennessee abandoned *lex loci delicti* for a "most significant relationship" test in 1992. *See Hataway v. McKinley*, 830 S.W.2d 53, 59 (1992).

Despite this, the Court agrees with *Williaford*'s reasoning. The THRA's language is clear: the purpose of the statute is to "provide for execution *within Tennessee* of the policies embodied in [federal civil rights law]." Tenn. Code Ann. § 4-21-101 (emphasis added). The Tennessee Supreme Court has previously held that "[w]hen statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would extend the meaning of the language[.]" *State v. Welch*, 595 S.W.3d 615, 621-22 (Tenn. 2020) (quoting *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009)). The statute's purpose section is aimed at acts committed within the state, as the *Williaford* court previously found. Even when taking the "most significant relationship" test into account, the law "provides that 'the law of the state where the injury *occurred* will be applied unless some other state has a more significant relationship to the litigation.'" *Goodbar v. Technicolor Videocassette of Michigan, Inc.*, No. 09-2553, 2010 WL 5464796, at *4 (W.D. Tenn. Dec. 30, 2010) (quoting *Hataway*, 830 S.W.2d at

59); *see also Gilbert v. Choo-Choo Partners II, LLC*, No. 1:05-CV-99, 2005 WL 1263065, at \*1

(E.D. Tenn. May 26, 2005) (allowing a Georgia citizen to proceed with a THRA claim due to

discrimination allegedly faced while employed in Tennessee). The conduct and injury here

occurred in Mississippi, with the only connection to Tennessee being Whitehead's place of

residence. Further, whether the THRA even could apply to acts committed in Mississippi would

depend on whether Mississippi law allowed such extraterritorial effect. *Williaford*, 1998 WL

77627, at \*2-3 ("The statute laws of a State have of themselves no extraterritorial force, and

whatever effect they have in foreign States they have by virtue of the laws of such State, or under

the doctrine of the comity of the states.") (quoting *Snyder v. Yates*, 112 Tenn. 309, 312 (1903)).

Given that all of the alleged tortious conduct occurred in Mississippi, Whitehead's claims under

the Tennessee Human Rights Act are hereby **DISMISSED**.

2. *Whitehead's Title VII Claims*

    Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against

any employee on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-

2(a)(1). Under the familiar standard of *McDonnell Douglas*, a *prima facie* case of Title VII race

discrimination has four essential elements: 1) the plaintiff must be a member of a protected class,

2) they must suffer an adverse employment action, 3) they must be qualified for their position,

and 4) a similarly situated employee outside of the protected class or classes must be treated more

favorably than them. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010) (citing

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). However, a plaintiff is not

required to state a *prima facie* case to survive a Motion to Dismiss, even though it may be helpful

to their case. *Davis v. Prison Health Servs.*, 679 F.3d 433, 439-40 (6th Cir. 2012). Instead, "at the

motion-to-dismiss stage, a plaintiff bringing an employment discrimination claim need only

satisfy the plausibility standard of *Twombly*." *Menge v. City of Highland Park*, No. 21-10152, 2022 WL 54544, at *8 (E.D. Mich. Jan. 5, 2022) (citing *Smith v. Wrigley Mfg. Co. LLC*, 749 F. App'x 446, 448 (6th Cir. 2018)).

Procedurally, before a plaintiff can bring a Title VII claim in federal court, they must "file[e] *timely* charges of employment discrimination with the EEOC, and [receive] and ac[t] upon the EEOC's statutory notices of the right to sue." *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003) (quoting *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1486 (6th Cir. 1989)) (emphasis added).[4] This is not a jurisdictional requirement, but "is akin to a statute of limitations." *Brown v. Hyperion Seating Corp.*, 194 F.3d 1311 (Table), 1999 WL 801591, at *2 (6th Cir. 1999). The measure of an EEOC charge's timeliness depends on whether the state where it is filed is a "deferral state," which has enacted its own laws prohibiting employment discrimination, or is not. *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394 407 (6th Cir. 1999). If the relevant state is a deferral state, then plaintiffs have a 300-day period in which to file their charge, while non-deferral states have only a 180-day period. *Id.* This time period begins to run on the date when the plaintiff "learns of the [challenged] employment decision itself, not when the plaintiff learns that the employment decision may have been discriminatorily motivated." *Amini v. Oberlin College*, 259 F.3d 493, 499 (6th Cir. 2001).

Sterling argues that Whitehead failed to timely file her EEOC charge. Mississippi is a non-deferral state, meaning Whitehead had a 180-day period after she learned of her challenged employment decision in which to file her claim. *Ingram v. Pizza Hut*, No. 2:11-CV-136-SA-SAA, 2013 WL 866985, at *2 (N.D. Miss. Mar. 7, 2013) (citing 42 U.S.C. § 2000e-9(e)(1); *Nilsen v.*

---

[4] Plaintiffs can alternatively pursue their claims through the state administrative equivalent of the EEOC rather than the federal agency, but some form of administrative charge is required before bringing a Title VII claim in federal court. *Booth v. Nissan N. Am., Inc.*, 927 F.3d 387, 392 (6th Cir. 2019).

*City of Moss Point*, 621 F.2e 117, 121 (5th Cir. 1980)). Whitehead filed with the EEOC on April 19, 2021. (ECF No. 37-1, 8.) Thus, any claims based on discriminatory acts that occurred before October 21, 2020, are time-barred. Sterling argues this precludes all of Whitehead's claims, since "[t]he limitations began to run, at the latest, on October 13, 2020, when Plaintiff initiated her internal claim of discrimination and retaliation." (ECF No. 37, 7.) Whitehead independently confirmed in her EEOC charge that this internal complaint came on October 13, 2020. (ECF No. 37-1, 8.) In her EEOC charge, the only conduct she details as occurring after October 21, 2020, is her two conversations with Sterling's investigator, Nick Slabaugh. (*Id.*) While Whitehead states that the last act of discriminatory conduct she faced was her second conversation with Slabaugh on April 13, 2021, she provides no facts that would support that conclusion.[5] Thus, all discriminatory conduct Whitehead alleges occurred before October 21, 2020.

Whitehead makes one argument to save her claims: she states that she has "sufficiently set forth allegations under the continuing violation doctrine." (ECF No. 44-1, 3-4.) The continuing violation doctrine is a theory that allowed plaintiffs to toll the limitations period under two different approaches, summarized by the Sixth Circuit as follows:

> The first category arises where there is some evidence of present discriminatory activity giving rise to a claim of continuing violation such as where an employer continues to presently imposes [sic] disparate work assignments or gives unequal pay for equal work.... The second category of continuing violation arises where there has occurred a long-standing and demonstrable policy of discrimination. This requires a showing by a preponderance of the evidence that some form of intentional discrimination against the class of which plaintiff was a member was the company's standing operating procedure.

---

[5] The entire allegation, which was not repeated in her Amended Complaint, is produced here: "On April 13, 2021, Slabaugh informed me he would get back in contact with me after I asked him how could he have done an adequate investigation, when he did not know Jordan has been retaliating against me by sharing with customers I am no longer an employee and she has taken my DCA certification plaque off the wall." (ECF No. 37-1, 9.)

*Sharpe v. Cureton*, 319 F.3d 259, 266-67 (6th Cir. 2003) (quoting *Burzynski v. Cohen*, 264 F.3d 611, 618 (6th Cir. 2001)). Whitehead explicitly argues that she "can make a showing that Defendant's actions fit into one of these categories." (ECF No. 44-1, 4.) However, Whitehead does not acknowledge that the continuing violations doctrine was significantly altered by *National R.R. Passenger Corp. (Amtrak) v. Morgan*, 536 U.S. 101, 111-14 (2002). There, the Supreme Court held that "plaintiffs are now precluded from establishing a continuing violation exception by proof that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period," essentially foreclosing the first category listed above. *Taylor v. Donahoe*, 452 F. App'x 614, 619 (6th Cir. 2011) (quoting *Sharpe*, 319 F.3d at 268). "The Supreme Court in *Morgan* distinguished between discrete acts and hostile work environment claims," and found that "discrete acts that fall within the statutory period do not make those that fall outside the period timely." *Id.* (citing *Morgan*, 536 U.S. at 112). Further, "[a]n employer's refusal to rehire or recall an employee after a lay-off has specifically been held to be a discrete act under *Morgan*." *Cunningham v. Washington Group Intern., Inc.*, No. 08-1308, 2009 WL 2971870, at *4 (W.D. Tenn. Aug. 11, 2009) (citing *Parisi v. Boeing Co.*, 400 F.3d 583, 586 (8th Cir. 2005)). The second category, which *Morgan* did not address, requires a plaintiff to "allege an 'over-arching policy of discrimination' against the protected class of which she is a member." *Pittman v. Spectrum Health System*, 612 F. App'x 810, 813 (6th Cir. 2015) (quoting *Janikowski v. Bendix Corp.*, 823 F.2d 945, 948 (6th Cir. 1987)).

Whitehead's claims stem from Sterling's failure to rehire/recall her from furlough in August and September 2020. These were discrete acts under Supreme Court and Sixth Circuit precedent, and her EEOC Charge provides specific dates for when she was told she would be recalled and for when the allegedly fabricated, racially motivated complaints about her were

made. (ECF No. 37-1, 8) (listing September 19 as the day she was told she would be recalled,

September 22 as the day the complaints arose, and October 13 as the day she internally

complained). All of these dates were before October 21, 2020, making any claim based on these

actions time barred. The complaint also does not allege any sort of overarching policy of race

discrimination at Sterling, instead focusing entirely on the discrimination Whitehead personally

faced. But "a plaintiff must demonstrate something more than the existence of discriminatory

treatment in her case" to take advantage of the second category. *Cunningham*, 2009 WL 2971870,

at \*4 (quoting *Sharpe*, 319 F.3d at 268).[6]

       The cases Whitehead cites in support of stating a continuing violation are almost entirely

pre-*Morgan*, except for two. In *Harrison v. Progressive Corp.*, the Northern District of Ohio

found that the plaintiff had stated a claim for a continuing violation based on the second category,

since the plaintiff had alleged that "Progressive's corporatewide policy of requiring [a

discriminatory test] is such a policy." No. 1:12 CV 625, 2012 WL 4461503, at \*11 (N.D. Ohio

Sept. 25, 2012). Whitehead did not allege any similar policy in her complaint. In *Cerjanec v. FCA

US, LLC*, the Eastern District of Michigan stated that it was "premature for the Court to determine

whether Plaintiffs have established either category of a continuing violation as the parties have

not yet conducted discovery." No. 17-10619, 2017 WL 6407337, at \*10 (E.D. Mich. Dec. 15,

2017) (citing *Harrison*, 2012 WL 4461503, at \*11; *Caldwell v. Rowland*, 932 F. Supp. 1018,

1021-22 (E.D. Tenn. 1996); *Parrish v. Ford Motor Co.*, 953 F.2d 1384 (table), 1992 WL 20305,

at \*6-7 (6th Cir. Feb. 7, 1992)). However, the cases cited by *Cerjanec* all deal with a specific

---

[6] Were this case to be analyzed under Fifth Circuit rather than Sixth Circuit precedent, due to the events taking place in Mississippi, the results would be the same. Fifth Circuit law does not even provide a second category related to an overarching policy. The Circuit has held that "Claims alleging discrete acts are not subject to the continuing violation doctrine; hostile workplace claims are." *Heath v. Bd. of Supervisors for Southern Univ. and Agricultural and Mechanical College*, 850 F.3d 731, 737 (5th Cir. 2017); *see also E.E.O.C. v. USF Holland, LLC*, 2021 WL 4497490, at \*2 (N.D. Miss. Sept. 30, 2021) ("Discrete actions . . . are not entitled to the shelter of the continuing violation doctrine") (quoting *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003)).

situation not present here, namely where the plaintiff has alleged a longstanding policy but failed to make "specific allegations of discriminatory acts within the relevant time limitations[.]" *Caldwell*, 932 F. Supp. at 1021 (discussing *Parrish*, 1992 WL 20305 at *6). In those cases, discovery may be warranted to determine the specific dates of discriminatory acts that are evidence of the alleged general policy. But this is not the case here. Whitehead has not alleged a policy, and the discriminatory acts she has alleged are all outside of the statute of limitations. Her claims are time-barred.

## IV.    CONCLUSION

For the reasons above, Sterling's Motion for Judgment on the Pleadings is **GRANTED.** All other outstanding motions are thus **DENIED** as moot.

**IT IS SO ORDERED** on this the 3rd day of January, 2023.

<div style="margin-left:50%">

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE

</div>